UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOHN B.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   CIVIL NO. 3:21cv485 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. § 423(a); §1382c(a)(3). Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental

---

[1] To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2024.

2. The claimant has not engaged in substantial gainful activity since May 7, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative joint disease of the left ankle; tarsal tunnel of the left foot; chronic regional pain syndrome (CRPS) of the left lower extremity; degenerative disc disease of the lumbar spine; attention deficit disorder (ADD); major depressive disorder; bipolar disorder; generalized anxiety disorder; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), as the claimant can lift, and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; and stand and/or walk for 2 hours each in an 8-hour workday. The claimant can never operate foot controls with the left foot. The claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights or around moving mechanical parts. The claimant can never operate a motor vehicle. The claimant can have occasional exposure to humidity; wetness; extreme cold; and extreme heat. The claimant can have frequent exposure to dust, odors, fumes, and pulmonary irritants; and vibration. The claimant cannot work on rough or uneven surfaces. The claimant is able to perform simple, routine tasks; and make simple work-related decisions. The claimant can occasionally interact with supervisors, coworkers, and the public. The claimant's time of [sic] task can be accommodated by normal breaks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 13, 1980 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability

>    because using the Medical-Vocational Rules as a framework supports a finding
>    that the claimant is "not disabled," whether or not the claimant has transferable
>    job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual
>     functional capacity, there are jobs that exist in significant numbers in the national
>     economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969,
>     and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act,
>     from May 7, 2018, through the date of this decision (20 CFR 404.1520(g) and
>     416.920(g)).

(Tr. 18-29).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on January 6, 2022. On January 18, 2022, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on March 2, 2022. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

>    The following steps are addressed in order: (1) Is the claimant
>    presently unemployed? (2) Is the claimant's impairment "severe"?
>    (3) Does the impairment meet or exceed one of a list of specific
>    impairments? (4) Is the claimant unable to perform his or her
>    former occupation? (5) Is the claimant unable to perform any other
>    work within the economy? An affirmative answer leads either to

4

> the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed an application for DIB and SSI on March 8, 2019, alleging disability beginning May 7, 2018. (Tr. 15). Plaintiff's claim was initially denied on May 31, 2019. Plaintiff requested reconsideration but was again denied on September 4, 2019. *Id*. On June 9, 2020, Plaintiff appeared for a phone hearing before an ALJ. (Tr. 14-15). Vocational expert (VE) Diamond Warren was present for this hearing. (Tr. 74). Following the hearing, the ALJ requested medical interrogatory responses from medical expert (ME) Lee Fischer, and Plaintiff then requested a supplemental hearing. (Tr. 15). The supplemental phone hearing was held on December 3, 2020. At the supplemental hearing, the ME and vocational expert (VE) Kari Seaver-Ready were also present. Plaintiff was represented by attorney Nick Lavella at both hearings. *Id*. The ALJ issued an unfavorable decision on February 24, 2021. (Tr. 12). Plaintiff filed a request for review by the Appeals Council, which denied the request on May 6, 2021. (Tr. 1). Plaintiff then timely filed a complaint with this Court.

In support of remand, Plaintiff first argues that the ALJ erred in his evaluation of the medical opinion evidence. For claims filed after March 27, 2017, as is the case here, the Social Security Administration provides that its adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. §§ 404.1520c and 416.920c. The agency's regulations require

5

an ALJ to consider any medical opinions provided by a medical source using several factors, including supportability, consistency, relationship with the claimant, and specialization. 20 CFR 416.920c (c) (1) – (5). The most important factors considered when determining the persuasiveness of a medical source opinion are supportability and consistency. 20 CFR 416.920c (b)(2). Therefore, an ALJ must "explain how [they] considered the supportability and consistency factors for a medical source's opinions . . . in [the claimant's] determination or decision." An ALJ may explain how they considered the other factors, but this is not required. *Id*.

Where opinions are equally well-supported and consistent with the record, the agency explains that an examining relationship should be considered as a factor in favor of an opinion because a "medical source may have a better understanding of [a claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder." 20 CFR 416.920c (c)(3)(v). Furthermore, a treating relationship may demonstrate that a "medical source has a longitudinal understanding of [the claimant's] impairment(s)," taking into account subfactors like the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, and the extent of the treatment relationship. 20 CFR 416.920c (c) (3) (i) – (iv).

In the present case, Dr. Kristl, Plaintiff's treating neurologist, provided a medical source statement on May 20, 2020. (Tr. 1345-49). He provided the diagnostic criteria that were met for chronic regional pain syndrome (CRPS). (Tr. 1345-46). He indicated that Plaintiff was not a malingerer. (Tr. 1347). He said that depression and anxiety contributed to the severity of Plaintiff's symptoms and functional limitations. He thought that Plaintiff's combination of physical impairments and emotional factors was reasonably consistent with the symptoms and

6

functional limitations described in his statement. He believed that Plaintiff's experience of pain or other symptoms would constantly be severe enough to interfere with the attention and concentration needed to perform even simple work tasks and that Plaintiff would be incapable of even low-stress jobs. *Id*. He provided limitations to less than sedentary work. (Tr. 1348-49). He said that Plaintiff would have good days and bad days and would likely be absent from work as a result of his impairments or treatment more than four days per month. (Tr. 1349).

> In considering Dr. Kristl's opinion, the ALJ held that:
>
> Dr. Kristl completed an opinion in July 2020 finding that the claimant could perform less than sedentary work, and needed to shift positions continuously. Dr. Kristl opined that the claimant would miss work more than 4 days a month (Exhibit 31F). The undersigned does not find the opinion of Dr. Kristl to be persuasive, as they [sic] are not consistent with or supported by the record. The undersigned notes that Dr. Fischer testified that even a treating doctor would have to be a psychic in order to determine how much work a person would miss (Hearing Testimony). The undersigned also notes that there is nothing to support the less than sedentary work or need to miss work, as he had improvement in his symptoms with conservative care (Exhibits 7F/5-7, 16F6-8, 40F/30-33, 38-40, 41F/2-5). There is nothing to support the need to take breaks, as he could stand and walk more than normal (Exhibit 41F/2-5). The claimant had fairly normal clinical findings as well, including intact gait and strength (Exhibits 4F/5-7, 11F, 32F/2-19, 23-24, 40F/26-29, 41F/6-10).

(Tr. 27).

Plaintiff argues that the record clearly shows that Plaintiff's pain management treatment has not been limited to "conservative care." Plaintiff has received at least four lumbar sympathetic blocks, has had a spinal cord stimulator implanted, and underwent surgery to have painful hardware from past surgeries removed from his left foot. (Tr. 480, 487, 575, 1112). He is on morphine for pain control of his CRPS. (Tr. 1697). Plaintiff also contends that his "improvement" has been relatively minimal. Plaintiff takes issue with the ALJ's claim that

7

Plaintiff can "walk more than normal," which the ALJ based on a citation to Exhibit 41F, pages 2 to 5 (Tr. 1697-1700). This rehabilitation specialist visit note from November 2020 indicates that Plaintiff could "move around better" on morphine, but he otherwise "just lays in bed all day due to pain." (Tr. 1697). This note even mentions "the extensive amount of meds he has tried and failed" and the "minimal benefit" from his spinal cord stimulator. Plaintiff said that regarding his development of lower back pain, he was "doing about the same." In discussing his condition, Plaintiff said that with the morphine, he could "stand and walk more than normal"—as in, more than his baseline of being limited to bed all day. *Id*. This is not an ability to "walk more than normal" people, or indicative of the ability to persist at work without the need for breaks.

Additionally, Dr. Fischer's odd testimony that one would have to be psychic to know how much work a person would miss per month is entirely unhelpful. This is a routine assessment in nearly every case and an estimate of time off work can be determined by a person's medical history, current medications, and general prognosis.

Plaintiff also notes that the ALJ's observation that Plaintiff has "fairly normal clinical findings" is not supported in the record. Plaintiff's doctors continued to provide invasive procedures and heavy pain medications for Plaintiff's pain, which is strong support for the notion that Plaintiff had rather severe pain. Additionally, there are positive clinical findings in the record such as antalgic or limping gait (Tr. 1139, 1221), left calf atrophy (Tr. 650), hyperesthesia (Tr. 650), reduced reflexes in the lower extremities (Tr.. 651), and observed pain with walking (Tr.. 1589). This Court agrees with Plaintiff that the ALJ's analysis of the medical opinions was the product of improper cherry-picking of the medical record to support his conclusions. *Knapp v. Berryhill*, 741 Fed. Appx. 324, 327-329 (7th Cir. 2018); *Cole v. Colvin*, 831 F.3d 411, 416 (7th

Cir. 2016) (citing *Price v. Colvin*, 794 F.3d 836, 839-40 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

Plaintiff also contends that the ALJ's evaluation of Dr. Fischer's opinion was erroneous. The ALJ held that Dr. Fischer's opinion was persuasive:

> The impartial medical expert, Dr. Fischer, completed an opinion indicating that the claimant could perform the lifting of light work with 2 hours of standing and walking each along with postural and environmental limitations (Exhibit 35F, Hearing Testimony). The undersigned finds the opinion of Dr. Fischer to be persuasive, as it is consistent with and supported by the record. In particular, the claimant is limited to the standing and walking of sedentary work because of increased left lower extremity and back pain with such activity (Exhibits 4F/15-17, 16F/6-8). The claimant has postural restrictions because of increased back and left lower extremity pain with certain activity, including bending and climbing (Exhibits 4E, 11F). The claimant has hazard limitations because of a limping gait and some decreased sensation due to his left lower extremity impairments (Exhibits 32F/2-7, 40F/22-25, 41F/6-10). The claimant has other environmental restrictions because of increased pain in certain conditions, including with weather changes (Exhibits 4E, 31F).

(Tr. 27).

Plaintiff contends that the claim that Dr. Fischer's suggested limitations, rather than Dr. Kristl's opined limitations, are supported by the record is incorrect because Dr. Fischer went out of his way to say that he could not assess pain, he did not believe Plaintiff's reports of pain, and he did not trust that aggressive treatments for pain indicated that the pain existed. (Tr. 49-53). Dr. Fischer also indicated that he was simply not qualified to evaluate CRPS and its related symptoms including pain. When asked if he was familiar with CRPS, Dr. Fischer said that he was "relatively familiar with it" but could not "give you a detailed definition of it." (Tr. 45-46). He also dismissed reports of pain by saying that "one does not have to be pain free in order to work" and emphasized the presence or absence of "acute distress" to evaluate pain. (Tr. 50). He later referred

9

to CRPS as "supposedly some type of a neurologic problem," suggesting both a lack of familiarity with the condition and skepticism that it was a legitimate condition at all. (Tr. 51). Dr. Fischer's testimony regarding pain is particularly problematic because the agency recognizes that CRPS is characterized by a "degree of pain reported [that] is out of proportion to the severity of the injury sustained by the individual." SSR 03-2p. When subjective reports of disproportionate pain are characteristic of the condition, it would be wholly inappropriate to dismiss pain because of a perceived lack of clinical findings when the condition has been found to exist in an individual, and Dr. Fischer acknowledged that the diagnostic criteria were met. (Tr. 46-48).

Importantly here, Dr. Fischer is a non-examining source, and he is a family medicine physician, not a pain specialist or neurologist. (Tr. 1389). In addition to supportability and consistency (which weigh more in favor of Dr. Kristl's opinion), opinions by treating sources or relevant specialists typically are entitled to more weight. 20 CFR 404.1520c (3) (c) (1) – (4). Dr. Kristl is both a treating source and a relevant specialist, as a neurologist specifically treating Plaintiff's CRPS. Thus, for the above reasons, remand is required for a proper evaluation of the opinions of Dr. Kristl and Fischer.

Next, Plaintiff argues that the ALJ erred in his evaluation of the psychological expert opinions and failed to include limitations in the RFC for Plaintiff's moderate concentration limitations. With respect to Plaintiff's mental limitations the ALJ held:

> As for the opinion evidence regarding the claimant's mental limitations, the State agency psychological consultants found that he could handle detailed tasks and relate on a superficial basis with others (Exhibits 1A, 2A, 5A, 6A). The undersigned finds the opinions of the State agency psychological consultants to be somewhat persuasive, as they are somewhat consistent with and supported by the record. Specifically, the claimant is limited to simple tasks because of trouble concentrating and with his short-term memory due to ADD, PTSD, and side

>effects from medication (Exhibits 5F/9-10, 12-13, 15-17, 10F, 19F/30-34, 37F/7-11, Hearing Testimony). The claimant also has such restrictions because of difficulty with these activities related to his pain (Exhibits 4F/21-23, 8F/4, Hearing Testimony). The claimant has social limitations because of trouble interacting due to his bipolar disorder, anxiety disorder, depression, and PTSD (Exhibits 4E, 8F/12-14, 10F).

(Tr. 27-28).

Plaintiff's core complaint on this issue is that the ALJ did not explain why he assessed the concentration limitations in the way that he did. Plaintiff contends that the assignment of limitations that currently exists is arbitrary, opaque and indecipherable. Plaintiff also expresses his belief that if the ALJ had asked the VE about the impact of a limitation to superficial interactions, the VE would have likely testified that the available job base was greatly eroded. This Court finds that the ALJ's discussion on this point to be hurried, as if the mental limitations were an afterthought in the decision. Thus, this issue will be remanded for a fuller explanation of which opinions were persuasive in what areas, and how the persuasive limitations were incorporated into the RFC.

Next, Plaintiff argues that the VE's determination that there are 59,000 jobs in the national economy that the Plaintiff can perform to be an insignificant number. "If the claimant makes it past step four, the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of jobs that exist in the national economy." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001)).

This is a recurring issue in Social Security appeals and, as both parties note, the Courts in the Seventh Circuit have reached mixed results regarding what constitutes a "significant" number

11

of jobs. In a non-precedential disposition, the Seventh Circuit stated in dicta that 110,000 jobs nationally was enough to support the ALJ's finding. *Primm v. Saul* 789 F.App'x 539, 546 (7th Cir. 2019).  In *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009), the Seventh Circuit held that 4000 jobs in the Milwaukee area was not insignificant, and noted that "it appears to be well-established that 1,000 jobs is a significant number."   This Court has concluded that 41,000 jobs[2], 99,000 jobs[3], and 120,000[4] jobs are a significant number. As 59,000 falls squarely within these numbers, it is also a significant number of national jobs.  Thus, there is no basis for remand on this point.

## Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.


 Entered: March 7, 2022.


>                                                    s/ William C.  Lee
>                                                    William C. Lee, Judge
>                                                    United States District Court

---

[2] *Zych v. Kijakazi*, No. 1:20cv414-SLC, 2021 WL 5319880, at *5 (N.D. Ind. Nov. 16, 2021.

[3] *Dugan v. Kijakazi*, No. 1:20-CV-00344-SLC, 2021 WL 5231731, at *4 (N.D. Ind. Nov. 9, 2021).

[4] *Knapp v. Saul*, No. 1:20-CV-00011-PPS-SLC, 2021 WL 536121, at *4-5 (N.D. Ind. Jan. 27, 2021).